Boynton, J.
The judgment of the court below can be sustained upon either of two grounds. First, that the tax deed under which the defendant claims, conveyed to Wads-worth a good title to the land in dispute; or secondly, that the rights acquired by the defendant, under the act of May 7, 1869 (66 Ohio L. 338), were such as to establish in him, as against the plaintiff, a title by adverse enjoyment. If the judgment can be sustained on neither of these grounds, it must be reversed, as the title of the plaintiffs was clearly established, unless defeated by the alleged tax title, or by rights acquired by defendant under said act.
It appears from the admitted facts that the proceedings preliminary to the validity of the auditor’s deed to Wads-worth, were in all respects in conformity to the statute, except the return of the treasurer to the auditor of the delinquent taxes of 1841, made in January, 1842, and his verification of the same. The burden of showing the return of the delinquent list with a verification of the correctness thereof, as prescribed by the statute, was on the defendant. Jones v. Devore, 8 Ohio St. 430. To meet this *215 requirement he offered in. evidence a copy of the return of the treasurer of the list of lands returned delinquent for the non-payment of the taxes charged thereon in 1841, to which he made oath before the auditor that, “ the foregoing is a correct list of lands aud town lots returned delinquent for the non-payment of taxes charged thereon, as therein stated and set forth for the year 1841, and that good reasons exist for returning the same delinquent.” This return and verification are wanting in two vital particulars. The proceedings were had under, the act of March 23, 1840 (Swan’s Stat. 1841, p. 104). So much of that act as is under consideration reads as follows: “The auditor shall attend at his office, on the first Monday of January, annually, to make settlement with the treasurer of his county, and ascertain the amount of taxes with which such treasurer is to stand charged; and the auditor shall then take from the duplicate previously put into the hands of the treasurer for collection, a list of all such taxes as such treasurer shall have been unable to collect, therein describing the property on which such delinquent taxes are charged, as the same is described on said duplicate, and shall note thereon, in a marginal column, the several reasons assigned by such treasurer why such taxes could not be collected; and such list shall be signed by the treasurer, who shall testify to the correctness thereof, under oath or affirmation, to be administered by the auditor; . . . and after deducting the amount of taxes so returned delinquent, and the collection fees allowed the treasurer from the several taxes charged on the duplicate, in a just and ratable proportion, the treasurer shall be held liable for the balance of such taxes.” § 27.
By the terms of this provision the treasurer is required to testify to the correctness of the list, and the list is required to contain a description of the property as it appears on the duplicate, on which the treasurer has been unable to collect the taxes. It must appear from the return, as verified, that the lands were actually delinquent. It is to the fact of delinquency that the oath is required. Lands *216 may be returned delinquent, although the taxes have in fact been paid. Brown v. Skinner, 17 Ohio St. 33, involved the construction of a similar provision in the act of 1820 (2 Chase, 1101). That act required the auditor to make out from the collector’s duplicate a list of all lands on which the taxes had not been paid to said collector, which list the collector was required to attest under oath. This had not been done. In remarking on this clause of the statute, the court say: “The object was to secure to the public a faithful account of moneys collected, and to secure the land owner against a sale for delinquent taxes until the fact of such delinquency should be established by the oath of the collector. He should, therefore, have declared under oath, that the schedule of delinquent lands which he undertook to verify, was a correct list of lands actually delinquent.” There is no material difference in the language of the two statutes as respects the character of the list to be verified. The act of 1820 required the collector to attest the list of lands on which the taxes had not been paid; and the act of 1840 required the treasurer to testify to the correctness of the list of all such taxes as he shall have been unable to collect.
But there was another omission to comply with the requirements of the statute yyhich is equally fatal to the validity of the tax deed. The statute required the auditor to note in a marginal column on the list of delinquent lands taken from the duplicate, the several reasons assigned by the treasurer, why such taxes could not be collected.
The statement in the affidavit of the treasurer, that good reasons existed for returning the lands delinquent, was not a compliance with this requirement of the statute. The reasons why the taxes could not be collected were a material part of the list to be verified by the oath of the treasurer. Seasons may have existed, which if given or noted, would have prevented a sale of the land as delinquent. The statute declares, among other things, that after deducting the amount of taxes so returned delinquent, and *217 the collection fees allowed the treasurer, from the several “taxes” charged on the duplicate, in a just and ratable proportion, the treasurer shall be held liable for the balance of such taxes. The purpose is here manifest to hold the treasurer to the payment of all taxes on lands not returned delinquent in conformity to the statute. The act made it the duty of the auditor to ascertain the amount of taxes with which the treasurer was to stand charged, and in the performance of this duty no list should have been accepted as made in compliance with the statute, whereon the reasons why the taxes could not be collected were not noted and sworn to.
It is finally claimed in support of the judgment below, that if the tax deed be held to be void by reason of irregularity in the proceedings preliminary to the sale,,that the evidence established the fact, that the defendant had acquired title to the premises, as against the plaintiff', by adverse possession for the period of twenty-one years. Not that he and those under whom he claims have actually occupied the premises, but that the necessary facts existed to bring the case within the act of May 7, 1869 (66 Ohio St. 388.)
We, however, differ with the defendant as to the effect of the facts established, and consequently as to the application of the statute. The tax sale was in 1842. It is admitted that the lands remained on the duplicate in the name of Baker, the original owner, until 1846, when they were transferred to the name of Wadsworth. Who paid the taxes from 1842 until 1846, we are not advised. Baker, however, did not, and it may be that the inference is a just one that they were paid by Wadsworth. But granting that he paid them, the fact still remains, that the land was not transferred on the duplicate to his name until the expiration of four years from the date of sale. The statute, by its terms, makes the existence of certain facts therein enumerated, prima facie proof of possession in the tax purchaser and those claiming under him, and in the event that the purchase is made after the tax sale, with knowl *218 edge of tbe facts, they are declared to constitute conclusive proof of such possession.
One of the facts required is, that the land sold, was “ from and after said sale,” placed and continued on the tax duplicate, in the name of the purchaser, or those claiming under him. The omission to cause the transfer for three years, is as fatal to the application of the statute as if no transfer were made at all. To enable a party to avail himself of the provisions of the statute, all the facts must exist, which the statute declares shall constitute evidence of possession.
This conclusion renders it unnecessary to determine the constitutionality of the statute.

Judgment reversed, and cause remanded for a new trial.

Okey, J"., dissents.